1997 SD 113

**Helen J. DRISCOLL, Plaintiff and Appellant,**

v.

**Robert E. DRISCOLL, III, Defendant and Appellee.**

**No. 19672.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1997.

Decided Sept. 10, 1997.

Timothy L. James of James & Associates, Yankton, for Plaintiff and Appellant.

Lee R. Burd, Sioux Falls, for Defendant and Appellee.

STEELE, Circuit Judge.

[¶ 1.] Plaintiff and appellant, Helen Driscoll, appeals from an order of the trial court denying a modification of rehabilitative alimony, denying her request to find the defendant, Robert "Mike" Driscoll, in contempt for failure to make payment of alimony, and denying attorney fees. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Helen and Mike Driscoll married December 16, 1977; the marriage terminated by decree of divorce entered September 6, 1991. Helen worked until just before the divorce when ill health forced her to quit. Prior to leaving the work force, she gained experience managing an art gallery, practicing law and teaching. Mike, also an attorney, is the former dean of the University of South Dakota School of Law. Helen now lives in California, and, as her health permits, is pursuing a career as a screenwriter. Mike retired in 1993 and serves as a director of the American Colloid Company.

[¶ 3.] At the time of the divorce, the court incorporated a stipulation and agreement between Helen and Mike into the judgment and decree of divorce. Pursuant to this stipulation and agreement, Helen was awarded rehabilitative alimony in the amount of $2,625 per month for a period of five years, subject to reduction on a sliding scale based on changes in Helen's future employment situation.

[¶ 4.] Two paragraphs of the stipulation and agreement are of particular importance to this appeal. Paragraph 10 of the stipulation and agreement deals with the value of the American Colloid Company stock and provides:

It is expressly stipulated and agreed that an increase in the value of stock in American Colloid Company shall never be raised by the Plaintiff or deemed by the Court to be a material change in circumstances which might otherwise justify a modification of the terms of the Judgment and Decree of Divorce.

Paragraph 17 deals with Helen's health and reads as follows:

It is expressly stipulated and agreed that a change in the health of the Plaintiff shall never be raised by her or deemed by the Court to be a material change of circumstances which might otherwise justify a modification of the terms of the Judgment and Decree of Divorce.

[¶ 5.] Since the divorce, Helen's health has seriously deteriorated, making employment difficult. Additionally, Mike's stock in Amer-

ican Colloid has substantially increased in value. Helen has suffered through an automobile accident and an injury involving a shopping cart which have contributed to the deterioration of her health. She has also undergone a number of surgeries.

[¶ 6.] Helen has used a good portion of the property settlement to relocate from an apartment in a bad neighborhood to a house which she purchased in a better location for $295,000. She has invested an additional $150,000 in improvements to that house as it was in poor condition at the time of purchase. Her mortgage payment is over $1,100 per month and the real estate taxes are approximately $4,000. She receives approximately $600 in rent per month from an apartment attached to the garage of the home.

[¶ 7.] Since the divorce, Mike's net worth has increased due to the increase in value of the American Colloid stock, stock splits, and large stock gifts. His current income is approximately the same as it was at the time of the divorce; however, it is largely unearned. He now draws from the South Dakota Retirement System, receives stock dividends and works part time on the American Colloid Board of Directors.

[¶ 8.] Due primarily to Helen's continued health problems which prevent her working for extended periods of time in a day, she requested a modification or extension of the rehabilitative alimony agreed to in the stipulation, which was incorporated into the judgment and decree of divorce.

## ISSUES

[¶ 9.] Three issues are presented for review:

1. Did the trial court abuse its discretion by refusing to extend or modify rehabilitative alimony when there has been a change of circumstances because of Helen's deteriorating health?
2. Did the trial court err by refusing to hold Mike in contempt for failing to make alimony payments?
3. Did the trial court abuse its discretion by denying Helen's request for attorney fees?

## STANDARD OF REVIEW

[¶ 10.] "We will not disturb an award of alimony unless the trial court clearly abused its discretion." *Saxvik v. Saxvik,* 1996 SD 18, ¶ 9, 544 N.W.2d 177, 179 (citing *Steffens v. Peterson,* 503 N.W.2d 254 (S.D. 1993)). The standard of review with regard to award of attorney fees is also abuse of discretion, looking at the totality of the circumstances. *Kappenman v. Kappenman,* 522 N.W.2d 199 (S.D.1994). We review the trial court's findings as to contempt under a clearly erroneous standard. *Taecker v. Taecker,* 527 N.W.2d 295, 298 (S.D.1995).

## ISSUE ONE

[¶ 11.] **Did the trial court abuse its discretion by refusing to extend or modify rehabilitative alimony when there has been a change of circumstances?**

[¶ 12.] An important fact which must be considered in this case is that the parties agreed at the time of the stipulation that Helen would not claim her health or the increase in the value of the American Colloid Company stock as a change of circumstance in order to modify the alimony provisions of the divorce decree. These are the very factors she now claims have changed to the extent that a modification of the alimony award is justified.

[¶ 13.] We conclude that the principles of estoppel should be employed to foreclose Helen's complaint in this case.

[¶ 14.] "Estoppel occurs when '[o]ne who enters into a stipulation or agreement for judgment ... may not later challenge the judgment or take a position inconsistent with [an] earlier position.'" *Jopling v. Jopling,* 526 N.W.2d 712, 715 (S.D.1995) (quoting *Warren Supply v. Duerr, Pliley, Thorsheim Development,* 355 N.W.2d 838, 840 (S.D. 1984)).

[¶ 15.] The Wisconsin Supreme Court applied estoppel to facts similar to those in this case in *Nichols v. Nichols,* 162 Wis.2d 96, 469 N.W.2d 619 (1991). There, the parties had stipulated that a maintenance award would be non-modifiable, and it was incorporated into the judgment and decree. The

payee ex-spouse later petitioned to increase the award. The court identified four elements which, if present, trigger estoppel to prohibit modification of an agreement which has been incorporated into a judgment and decree:

1. The parties entered into the agreement freely and knowingly,

2. The overall settlement was fair and equitable, and

3. The agreement is not illegal or against public policy, and

4. One party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

*Nichols*, 469 N.W.2d at 622.

[¶ 16.] Here, there is nothing in the record to indicate that the parties did not enter into their agreement freely and knowingly, or that the overall settlement was not fair at the time it was entered into. Although SDCL 25-4-41 grants the Court authority to modify support ordered from time to time, there is nothing in the statute which prohibits modification of its provision by agreement of the parties. As the Court in *Nichols* stated: "If the legislature intended to prevent parties from entering into nonmodifiable agreements, it would have expressly prohibited such agreements." 469 N.W.2d at 623. It is generally true that statutes regarding property division and alimony awards may be modified by agreement except when explicitly forbidden. *Id.*

[¶ 17.] Furthermore, it is good public policy to encourage settlement agreements. The stipulation here was therefore neither illegal nor against public policy. Helen is seeking to be released from the order which under SDCL 25-4-41 the Court could not have entered absent the agreement of the parties, i.e. making a support award which was nonmodifiable. All of the elements of estoppel are present in this case, and Helen should therefore be prohibited from seeking modification of the alimony award.

[¶ 18.] Because the application of estoppel disposes of this issue, we decline to address the questions of whether an award of rehabilitative alimony can later be extended or modified, and whether the nature of an award can be changed from rehabilitative alimony to supportive alimony in a subsequent proceeding.

## ISSUE TWO

**[¶ 19.] Did the trial court err by refusing to hold Mike in contempt for failing to make alimony payments?**

[¶ 20.] In *Thomerson v. Thomerson*, 387 N.W.2d 509 (S.D.1986) we defined civil contempt as arising

not from matters transpiring in court but rather from a person's failure to comply with orders and decrees issued by the court in a civil action for the benefit of an opposing party. *State v. American–News Co.*, 62 S.D. 456 at 459, 253 N.W. 492 at 494 [1934]. It is not always easy to classify a particular act as belonging either to criminal or civil contempt. *Id.* It may partake of the characteristics of both. *Id.* However, the distinction in punishment is clear. In criminal contempt, the order itself is in the nature of punishment. *Id.* at 460, 253 N.W. at 493. In civil contempt, the punishment is coercive, that is, it compels the person to act in accordance with the court's order. *Id.*; *State v. Knight*, 3 S.D. 509, 514, 54 N.W. 412, 413 (1893).

*Thomerson*, 387 N.W.2d at 512. Mike did not make all of the alimony payments pursuant to the court order in a timely fashion. The punishment for civil contempt of this sort is for Mike to pay the alimony he owes. While the alimony was not paid in a timely fashion, he did bring himself current at the time of the hearing. Since ultimately Mike acted in accordance with the court's order and there is no action to coerce, it follows that a finding of civil contempt is unnecessary. The trial court is affirmed on this issue.

## ISSUE THREE

**[¶ 21.] Did the trial court abuse its discretion by denying Helen's request for attorney fees?**

[¶ 22.] This Court outlined the standard for determining if attorney's fees should

be paid in divorce actions in *Kappenman.* The trial court first considers if the fee is reasonable. 522 N.W.2d at 204. The judge then reviews:

> (1) the amount and value of the property involved; (2) the intricacy and importance of the litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; (8) whether briefs were required; and (9) whether an appeal to this court is involved.

*Id.* (citing *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Holforty v. Holforty,* 272 N.W.2d 810 (S.D.1978)). The trial court addressed these factors in its findings of fact and conclusions of law as well as several additional factors: "the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case." *Hogie v. Hogie,* 527 N.W.2d 915, 922 (S.D. 1995) (citing *Parsons v. Parsons,* 490 N.W.2d 733 (S.D.1992)). The trial court noted that considerable time was devoted to Helen's attempt to reopen the property settlement which was governed by established law and ultimately resolved by summary judgment. Further, Helen did not provide substantive evidence of her medical condition until just preceding trial even though the matter was pending for over a year and a half and Mike repeatedly requested such evidence. No effort was made to provide this evidence until a month before trial, resulting in inadequate notice of her medical expert. As a result, the expert's deposition was taken in California without Mike and significant activity followed regarding the inadequacy of the notice and remedies. Much, if not all, of this activity could have been avoided by timely efforts on Helen's part.

[¶ 23.] In denying Helen's attorney fees, the trial court also examined the property owned by each party; their relative incomes; and whether the property of the parties is in fixed or liquid assets. The trial court concluded that while Helen's income is primarily from alimony, she still has a substantial amount of property and readily liquifiable assets in the paintings and some in savings. Therefore, we hold that the trial court did not abuse its discretion in denying Helen's request for attorney fees.

[¶ 24.] We affirm on all issues.

[¶ 25.] AMUNDSON, KONENKAMP and GILBERTSON, JJ., and TUCKER, Circuit Judge, concur.

[¶ 26.] STEELE, Circuit Judge, for MILLER, C.J., disqualified.

[¶ 27.] TUCKER, Circuit Judge, for SABERS, J., disqualified.