2005 SD 88

**Ronda Meyer OMAN, Plaintiff and Appellee,**

v.

**Gregory Eugene OMAN, Defendant and Appellant.**

No. 23401.

Supreme Court of South Dakota.

Considered on Briefs April 25, 2005.

Decided July 20, 2005.

Jay C. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Rexford A. Hagg of Whiting, Hagg & Hagg, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶1.] This is an appeal from the trial court's grant of Ronda Oman's motions for contempt and continuation of alimony and the trial court's denial of Gregory Oman's motion to terminate alimony because of Ronda's remarriage. We reverse.

## FACTS

[¶2.] Ronda and Gregory were divorced without trial on the grounds of irreconcilable differences. As part of the divorce, the parties executed and the court adopted a Stipulation and Agreement addressing alimony, the division of property, and the care and custody of their minor child. The provision of the agreement providing for alimony is now in dispute.

[¶3.] Ronda remarried approximately three years after the divorce. In response, ex-husband Gregory stopped making his monthly alimony payments. Ronda filed a motion for contempt requesting that the trial court find Gregory in contempt for failing to make alimony payments as required by the Judgment and Decree of Divorce. She also filed a motion for continuation of alimony or, in the alternative, to modify child support. Gregory then filed a motion to terminate alimony based on Ronda's remarriage. The trial court granted Ronda's motion for contempt and her motion for continuation of alimony and denied Gregory's motion for termination of alimony. In doing so, the court found that the parties intended the alimony obligation to continue in the event of remarriage. The trial court further found that "[Ronda], as consideration for the lump sum, fixed payment of alimony for a specific term of seven years, forewent an equalization payment of $4,000 and reduced child support, and for tax considerations, accepted a fixed, unqualified lump sum payment of alimony for a seven year period at $429 per month[.]" Husband appeals and raises the following issue:

Whether the trial court erred in determining that the parties' Stipulation and Agreement and Divorce Decree created an obligation for husband to continue paying alimony to ex-wife upon her remarriage.

## STANDARD OF REVIEW

[¶4.] The trial court's interpretation of the parties' stipulation and agreement is reviewed de novo. *Duran v. Duran*, 2003 SD 15, ¶7, 657 N.W.2d 692, 696. Likewise, questions of law are reviewed de novo. *Hanig v. City of Winner*, 2005 SD 10, ¶6, 692 N.W.2d 202, 204.

## DECISION

[¶5.] Ronda's claim for continuing alimony is based on the following: (1) that the language of the parties' stipulation made the alimony non-modifiable in duration and amount, and (2) that the alimony award was in the nature of a lump-sum fixed payment as part of the property settlement.

[¶6.] First, Ronda claims that the court cannot modify alimony because of the agreement of the parties, regardless of her remarriage. She relies on the following language in the agreement:

HUSBAND shall pay, in cash or money order, alimony to WIFE in the sum of Four Hundred and Twenty Nine Dollars ($429) per month by the first of each month for seven (7) years from the

date of the Entry of the Decree of Divorce. *It is specifically understood by the parties that the alimony provided for herein is non-modifiable by either party, as to the amount and duration, for so long as alimony is ordered to be paid.* It is further specifically understood that alimony is taxable to the recipient, as income, and tax deductible to the obligor. The parties have entered into this provision with the foregoing factors in mind. It is recognized that one of the reasons for this support is the reduced child support set forth herein, based on the custodial arrangement.

(Emphasis added).

■ [¶ 7.] We first addressed whether alimony automatically terminates upon remarriage in *Marquardt v. Marquardt by Rempfer*, 396 N.W.2d 753 (S.D.1986). In *Marquardt*, we rejected automatic termination and adopted, instead, the rule "that remarriage establishes a *prima facie* showing supporting termination." *Id.* at 754. The burden then shifts to the recipient to show that "extraordinary circumstances exist which require the continuation of the alimony payments." *Id.* (quotations and citation omitted). We said:

> While we recognize that in some states remarriage is grounds for automatic termination of alimony benefits, we feel the more judicious course is to hold that remarriage establishes a prima facie showing supporting termination. Sound public policy abounds to support this holding. South Dakota law places a statutory duty on one spouse to support the other. SDCL 25–7–1. As has been said by a number of other courts, it is

"illogical and unreasonable" that a spouse should receive support from a present spouse and a former spouse at the same time.

*Id.* (citing *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *Wolter v. Wolter*, 183 Neb. 160, 158 N.W.2d 616, 619 (1968)).

[¶ 8.] Although we have specifically rejected the rule that alimony automatically terminates upon remarriage, we note that courts applying the automatic termination rule recognize an exception when the parties have expressly agreed to continue alimony upon remarriage. *See Voyles v. Voyles*, 644 P.2d 847, 850 (Alaska 1982); *Keller v. Keller*, 130 Idaho 661, 946 P.2d 623, 627 (1997); *Driscoll v. O'Reilly*, 486 So.2d 693, 694 (Fla.Dist.Ct.App.1986). In effect, Ronda is asking this Court to adopt a similar exception to the *Marquardt* rule by enforcing the terms of the parties' agreement.[1] She claims that the terms of the agreement expressly contemplate continuing alimony upon remarriage. The specific term upon which Ronda relies provides that alimony is "non-modifiable by either party, as to the amount and duration" for a period of seven years. Obviously, this language makes no reference to remarriage. Nevertheless, Ronda urges enforcement of the agreement because of the "non-modifiable" language, regardless of her remarriage. In only one other case, *Driscoll v. Driscoll*, has this Court enforced an agreement not to modify alimony. 1997 SD 113, 568 N.W.2d 771. In *Driscoll*, the wife had specifically agreed "never" to raise a change in her health or an increase in the value of husband's stock

---

1. In *Peterson v. Peterson*, we were also urged to adopt an exception to the *Marquardt* rule. 434 N.W.2d 732, 735 (S.D.1989). We declined to adopt an exception in that case. Justice Morgan (voicing the majority on this issue) opined that since we had rejected the rule of automatic termination of alimony upon remarriage, the exception was also rejected and reliance on an exception to the rule "fail[s] out-of-hand." *Id.* at 739 (Morgan, J., concurring in result) (Sabers, J. and Miller, J., joining).

as "a material change of circumstances which might otherwise justify a modification" of the divorce decree. *Id.* ¶ 4, 568 N.W.2d at 772. The trial court determined that the wife was estopped by the language in the agreement. *Id.* ¶¶ 16–17, 568 N.W.2d at 774. We affirmed the trial court. "An important fact" in our decision to enforce the agreement was as follows:

> the parties agreed at the time of the stipulation that [wife] would not claim her health or the increase in the value of the [stock] as a change of circumstance in order to modify the alimony provisions of the divorce decree. These are the very factors she now claims have changed to the extent that a modification of the alimony award is justified.

*Id.* ¶ 12, 568 N.W.2d at 773.

[¶ 9.] We have since said that *Driscoll* has limited precedential effect. *See Savage v. Savage,* 2003 SD 46, ¶ 9, 661 N.W.2d 762, 765. We emphasized in *Savage* that the court always retains the power to modify alimony when there is a change in circumstances, regardless of the parties' agreement.[2] We said:

> This Court has been very clear about a trial court's ability to modify an alimony award. In *Paradeis v. Paradeis,* we reiterated the rule that "[o]nce a court approves an alimony award, it can modify it. This authority of a trial court is not affected by the fact [that] the original divorce judgment was based on an agreement between the parties[.]" 461 N.W.2d 135, 137 (S.D.1990) (citing *Connolly v. Connolly,* 270 N.W.2d 44 n2 (SD

1978)). In *Harding–Moyer v. Harding,* we again acknowledged that *a stipulation in the nature of spousal support or maintenance was not contractual in nature, but rather that it was subject to modification or termination on a showing of changed circumstances.* 2000 SD 126, ¶ 13, 616 N.W.2d 899, 902 (citing *Saxvik v. Saxvik,* 1996 SD 18, ¶ 9, 544 N.W.2d 177, 179).

*Id.* at ¶ 13, 661 N.W.2d at 765–66 (emphasis added). Consequently, the limited precedent of *Driscoll* does not stand for the premise that an agreement not to modify future alimony binds the court in the event of remarriage.

[¶ 10.] Here, the trial court found that terms of the agreement making alimony "non-modifiable by either party, as to the amount and duration" indicated that the parties *intended* the alimony to survive in the event of remarriage. Some jurisdictions that approve of alimony continuing upon remarriage require express language about remarriage in the parties' agreement. *See, e.g., Gunderson v. Gunderson,* 408 N.W.2d 852, 853 (Minn.1987); *In re Marriage of Allen,* 78 Wash.App. 672, 898 P.2d 1390, 1392 (1995); *Daopoulos v. Daopoulos,* 257 Ga. 71, 354 S.E.2d 828, 830 (1987). The agreement in this case does not expressly state that alimony should continue upon Ronda's remarriage. Since the agreement does not expressly state that alimony is to continue, the trial court erred by not applying the *Marquardt* rule.[3] Under the rule, the remarriage of Ronda established a prima facia case for termination of alimony shifting the burden

---

2. SDCL 25–4–41 sets forth the power of the court to compel alimony:

> Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may

from time to time modify its orders in these respects.

3. It is not necessary for us to address the circumstances or procedures under which we would enforce an express agreement to continue alimony upon remarriage, since it is not pertinent to the facts of this case.

to Ronda to show extraordinary circumstances for its continuation. Ronda did not claim or present a case for extraordinary circumstances. Absent a showing of extraordinary circumstances, her alimony should have ceased as of the date of Gregory's notice of hearing on the motion. *See Culhane v. Michels*, 2000 SD 101, ¶¶ 9–13, 615 N.W.2d 580, 584–85 (holding that pursuant to SDCL 25–7–7.3, alimony payments that become due prior to the notice of hearing on the petition for modification are final judgments and may not retroactively be erased).

[¶ 11.] Second, Ronda claims that her alimony is non-modifiable because it was in the nature of a lump-sum award. We have previously held that when alimony is awarded as a lump-sum, finality attaches preventing subsequent modification. In *Holt v. Holt,* we adopted the view that a divorce decree involving a lump-sum payment in gross or payable in installments is a final "adjustment of mutual rights and obligations as to be capable of a present vesting and ... absolute judgment." 84 S.D. 671, 674–75, 176 N.W.2d 51, 53 (1970). This includes a lump-sum as alimony. *Id. See also Steffens v. Peterson,* 503 N.W.2d 254, 259 (S.D.1993); *Bahr v. Bahr,* 85 S.D. 240, 246 n7, 180 N.W.2d 465, 468 n7 (1970). We have also determined that where alimony is actually provided as part of the property settlement, it is to be treated as a property division and, thus, is not modifiable. *See Lien v. Lien,* 420 N.W.2d 26, 28–29 (S.D.1988). Ronda asserts that the support award in this case was a lump-sum award for alimony and part of the property settlement. Ronda's evidence to the trial court was based upon negotiations between the parties prior to the final settlement. This evidence, however, is not relevant, since the agreement speaks for itself and is clear and unambiguous on its face. *Flynn v. Flynn,* 338 N.W.2d 295, 296 (S.D. 1983) (holding that the trial court erred in determining a divorce decree was ambigu-

ous on its face and that, because of this error, parole evidence was improperly admitted). *See also Steffens,* 503 N.W.2d at 258 ("A trial court, when asked to interpret a property settlement agreement incorporated into a divorce decree, applies contract principles.").

[¶ 12.] The plain meaning of the agreement does not support Ronda's claim. The provision on which she relies makes no reference to alimony as a lump-sum neither does it specify a gross amount payable in installments. The agreement is for a specified monthly amount for a duration of years. It is referred to throughout the agreement as "alimony." Nothing in the language of the agreement indicates that alimony was agreed to in lieu of property. In fact, the agreement specifies that the alimony award is related to child support and tax considerations. The agreement explains:

It is further specifically understood that alimony is taxable to the recipient, as income, and tax deductible to the obligor. The parties have entered into this provision with the foregoing factors in mind. It is recognized that one of the reasons for this support is the reduced child support set forth herein, based on the custodial arrangement.

[¶ 13.] In conclusion, the trial court erred by denying Gregory's motion to cease alimony. We reverse the denial of Gregory's motion. Since Ronda's alternative motion to modify child support was not considered by the trial court, we remand for consideration of that motion.

[¶ 14.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 15.] SABERS, Justice, deeming himself disqualified, did not participate.