1998 SD 29

**Louise A. URBAN, Plaintiff and Appellant,**

v.

**Gary L. URBAN, Defendant and Appellee.**

Nos. 19975, 19989.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1997.

Decided April 1, 1998.

Lee R. Burd, Sioux Falls, for plaintiff and appellant.

Richard A. Johnson of Strange, Farrell, Johnson, & Casey, Sioux Falls, for defendant and appellee.

MILLER, Chief Justice.

[¶ 1.] Louise and Gary Urban both appeal from the final judgment in their divorce action. We affirm in part, reverse in part, and remand for a determination of general alimony.

## FACTS

[¶ 2.] Urbans were married on January 15, 1972, in Chamberlain, South Dakota. During the marriage, Gary ran the family farm operation. Louise did not work outside the home until 1990, when she began a series of short-

term jobs, including: being a salesperson for Avon and Tupperware products, a substitute teacher, and a greenhouse manager. She was also employed at St. Joseph Indian School and the Chamberlain Academy. At the time of the divorce, she was working full-time at the Burger King restaurant in Chamberlain.

[¶ 3.] Four children were born of the marriage, with only their daughter Megan remaining as a minor at the time of the divorce.[1] In June, 1996, both parties sought a divorce based on irreconcilable differences. At the time of trial the judge did not rule upon certain issues, including alimony and property division. Therefore, Louise filed a motion to reopen, and a hearing was subsequently held on this motion on October 16, 1996. At this hearing, the trial court listened to testimony from Gary and Louise, and then finalized issues pertaining to the property division. The trial court did not award alimony, as it stated it did not have sufficient facts upon which it could.

[¶ 4.] Both parties appeal, raising several issues. Louise claims that the court erred in failing to award her alimony and in its valuation and division of the property. Gary asserts that the trial court abused its discretion in not giving him joint custody of the minor daughter, in requiring him to obtain counseling as a condition of child visitation, in refusing to award him attorney fees, and in not crediting him with a certain interest in land.[2]

## DECISION

[¶ 5.] **Whether the trial court erred in not awarding Louise alimony.**

[¶ 6.] Louise claims the trial court erred in not awarding her either general alimony or rehabilitative alimony. We agree as to general alimony, but disagree as to rehabilitative alimony.

### A. General Alimony

[¶ 7.] General alimony is an allowance for support and maintenance, with "its sole object the provision of food, clothing, habitation, and other necessaries for the support of a spouse." *Wilson v. Wilson*, 434 N.W.2d 742, 744 (S.D.1989) (citation and internal quotations omitted). When a party requests such alimony "they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of that need." *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D.1991).

[¶ 8.] When a trial court considers the need for general alimony and its amount and duration, it must balance the following factors: "[T]he length of the marriage; the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health, and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage." *Bradeen v. Bradeen*, 430 N.W.2d 87, 88 (S.D. 1988) (citations omitted). The trial court's decision regarding alimony will not be disturbed absent an abuse of discretion. *Id.*

[¶ 9.] Gary argues that Louise failed to establish either a need for support or that he has sufficient means to provide for all or part of that need. *See Fox*, 467 N.W.2d at 767. The issue of alimony was raised at trial when the court asked both parties if they wanted to make an argument concerning alimony as there was not really any earlier presentation on it. Gary's attorney wanted to argue alimony at that point, but Louise's attorney stated:

Well, I'll argue that. Your Honor, the Court has awarded all of the money-making assets accumulated by this couple during their marriage to the husband, and prior to depreciation or after depreciation, he's still making somewhere between $28,-000 in 94 and about $50,000 in 95, and her earning capacity is down there like six or seven thousand dollars, it looks like to me.

Now the Court has deprived her of her home. She doesn't have the house. She's

---

**1.** Another child, Christopher, who was 17 at the time of trial, was considered to be emancipated and was not a subject of the divorce or child custody determinations.

**2.** Louise's appellate counsel did not represent her at trial.

got a minor child. She doesn't have any furniture. And she may have health problems. So I'm not suggesting that there should be a big amount, but you know, the Court knows if you don't award anything, then it's done, it's a done deal forever.

So I think it ought to be left open to see how this thing falls out before we make a ruling on it, and that you should award at least a small amount of alimony.

The trial court thus agreed to leave open the issue of alimony.

[¶ 10.] Later, Louise made a motion to reopen and a hearing was had. The hearing did not specifically address alimony. Towards the end of the hearing, however, Gary's attorney argued that there was no evidence presented on which to base an alimony award. Later in the proceedings, the trial court asked if there were any remaining questions, to which Gary's attorney asked if the trial court was going to award alimony. The judge stated that there were not sufficient facts upon which alimony could be awarded. At neither of these times did Louise's attorney disagree with the trial court or claim that there were sufficient facts to support an alimony award. While her attorney should have spoken up at the hearing, it is very clear and we now hold that Louise did present sufficient facts at trial to justify an award of general alimony. It was an abuse of discretion for the trial court to hold to the contrary.

◾ [¶ 11.] Louise presented evidence to support most of the six factors outlined above: This was a lengthy marriage that lasted twenty-four years; her earning capacity is substantially less than Gary's as she only earns a wage of $5.50 per hour at Burger King while, according to tax returns admitted into evidence, Gary had a total income of $28,093 in 1994 and $46,690 in 1995; Gary received all of the income-producing assets in the property division and also received the marital home, even though Louise has custody of their daughter;[3] both parties are similar in age, however, as to health and physical condition, there was testimony[4] that Louise suffers from a jaw condition and arthritis that affects and will continue to affect her ability to perform some jobs; the parties lived a middle-class lifestyle before their divorce, and Louise will not be able to maintain that lifestyle on her $5.50 per hour job; and, finally, while the divorce was decided on the ground of irreconcilable differences, there was testimony that Gary was abusive to both Louise and the children, which may have had an effect on her decision to seek a divorce.

[¶ 12.] Even though Louise's attorney could have been more diligent in presenting a case for alimony, there were many facts established at trial that justify an award of alimony to Louise. For the reasons set forth above we hold it was an abuse of discretion for the trial court to state that there were not sufficient facts upon which to base an award of general alimony.

### B. Rehabilitative Alimony

◾ [¶ 13.] Louise may be entitled to an award of general alimony, however, she is not entitled to an award of rehabilitative alimony. An award of rehabilitative alimony, like general alimony, is subject to an abuse of discretion standard of review. Rehabilitative alimony "must be designed to meet an educational need or plan of action whose existence finds some support in the record."

---

3. It is important to keep in mind that the property division and alimony are to be considered together to determine if their combined effect shows an abuse of discretion. *Heckenlaible v. Heckenlaible*, 1996 SD 32, ¶ 20, 545 N.W.2d 481, 485. It is also interesting to note that the trial court, when discussing a piece of property at the hearing after the trial, recognized Louise's need for support. The trial court stated: "And as far as the use of the inherited property, I think the Court also has to figure in or consider either party's need for support, and I think we have that in this situation with Mrs. Urban earning minimum wage. She certainly has the need for support when she has to leave the residence. That support, need for it, is more apparent." Given the nature of the property division, Louise's need for support is clear.

4. This testimony was in the form of a deposition of Dr. Robert Hille that was admitted into evidence at trial.

*Radigan v. Radigan,* 465 N.W.2d 483, 486 (S.D.1991) (citing *Ryken v. Ryken,* 440 N.W.2d 300, 303 (S.D.1989)). Typically, rehabilitative alimony is awarded when there is testimony to show an educational need or a plan of action to meet that need. *See Evans v. Evans,* 1997 SD 16, ¶ 35, 559 N.W.2d 240, 248–49. The record was insufficient to establish Louise's need for rehabilitative alimony. She presented no evidence of any educational need or plan of action to support such an award. Therefore, the trial court did not abuse its discretion in not awarding rehabilitative alimony.

[¶ 14.] We have considered and do affirm all of the remaining claims of the parties, holding that they are either issues controlled by settled South Dakota law or are ones of judicial discretion and there was clearly not an abuse of discretion.

[¶ 15.] Louise has also made a motion requesting appellate attorney fees in the amount of $4,024.82. As required, the motion is accompanied by itemized statements of costs incurred and legal services rendered. *See Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985).

[¶ 16.] We have considered all of the appropriate factors and hold that Louise is entitled to $1,500 of her requested appellate attorney fees.

[¶ 17.] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 18.] SABERS, KONENKAMP, and GILBERTSON, JJ., concur.

[¶ 19.] AMUNDSON, J., concurs in part and dissents in part.

AMUNDSON, Justice (concurring in part and dissenting in part).

[¶ 20.] I dissent as to the award of alimony to Louise.

[¶ 21.] The trial court explained that it did not award alimony because it did not have enough evidence establishing the need for alimony. This lack of evidence to support a showing of alimony is critical to this case. "[W]hen a party requests permanent alimony they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need." *Fox v. Fox,* 467 N.W.2d 762, 767 (S.D.1991).

[¶ 22.] However, Louise did not ask for a ruling on alimony at the time of trial. Instead, she advocated leaving the issue open. Her attorney stated: "So I think it ought to be left open to see how this thing falls out before we make a ruling on it, and that you should award at least a small amount of alimony." The trial court agreed to save the issue for another day as follows:

Well, the Court agrees with [Louise] on the point that maybe it would be best to leave it open. I don't know what you're going to come up with on a figure as to what [Gary] is going to owe [Louise]. With that, I want to have some sort of plan as to how that's going to be paid. You know, the Court doesn't want to have to force a sale, but at the same time, [Louise] has to find a place to live, and she will not be required to do that until such time as there are sufficient monies in the settlement paid to her that will allow her to do that.

And until that's submitted, the matter of alimony will be kept open.

Certainly, the trial court made it clear that further evidence was required in order to establish Louise's need for alimony, but ultimately none was forthcoming.

[¶ 23.] Louise did make a motion to reopen the case, but did not specifically mention her wish for alimony. A hearing was held, but again the subject of alimony barely came to light. In fact, Gary's attorney first brought up the issue, arguing that there was no evidence presented on which to base an alimony award. Gary's attorney pointed out that there was still nothing in the record that would indicate what Louise's needs were. Shortly thereafter, Gary's attorney asked if the trial court was going to award alimony.

The trial court stated that there were insufficient facts on which to do so. During this whole hearing, Louise's attorney remained silent on the issue of alimony. This was so even in the face of arguments by Gary's attorney against alimony, and the court's previous demands for further information and a plan to support any award of alimony.

[¶ 24.] Thus, Louise did not establish that she has "a need for support and that [her] spouse has sufficient means and abilities to provide for part or all of the need." *Fox*, 467 N.W.2d at 767. In fact, she did not even attempt to put on more evidence to support her position after the trial court had made it clear that there needed to be "some sort of plan" as to how the alimony would be paid. Based on this record, then, how can there be an abuse of discretion when a party is put on notice that additional evidence is needed to resolve the issue of alimony and none is forthcoming? The trial court should be affirmed on this issue because to do otherwise amounts to a retrial at the appellate level. An award of alimony by this court constitutes this court acting as a trial court which I choose not to do on this record.